UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas Jacobs,

Plaintiff,

v.

United Steelworkers of America,

Defendant.

Civil No. 00-1625 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Christopher R. Walsh, Esq., Walsh Law Office, 301 Fourth Avenue South, Suite 270, Minneapolis, MN 55415, appeared on behalf of Plaintiff.

Mark W. Bay, Esq., Peterson Engberg & Peterson, 700 Title Insurance Building, 400 Second Avenue South, Minneapolis, MN 55401, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 14, 2001, pursuant to Defendant's motion for summary judgment. In the Complaint, Plaintiff alleges discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 1981, and the Minnesota Human Rights Act (MHRA); Plaintiff further alleges discrimination on the basis of age in violation of the MHRA and Minn. Stat. § 181.81. For the reasons set forth below, Defendant's motion is granted.

## Background

On June 22, 1992, Joseph T. Ryerson & Son, Inc. ("Ryerson"),[1] hired Plaintiff. Defendant United Steelworkers of America ("USWA") negotiated the collective bargaining

[1] Plaintiff originally filed this action against both United Steelworkers of America and Ryerson. Plaintiff settled with Ryerson and stipulated to dismiss all claims against Ryerson.

FILED JAN 16 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 16 2002
DEPUTY CLERK

agreement under which Plaintiff worked at Ryerson and represented Plaintiff in any disputes he might have with Ryerson.

Plaintiff, who is of Hispanic and Native American descent, has offered extensive evidence regarding a generally racial hostile environment at Ryerson. At the outset, the Court notes that such evidence is irrelevant if the Plaintiff was not, himself, the subject of racial hostility or discrimination. As a result, the Court will limit its recitation of facts to those relevant to the Plaintiff's own employment at Ryerson.

Apart from general allegations that Plaintiff "many times" complained of harassment and discrimination at Ryerson, the Plaintiff notes two particular instances in which he requested that the USWA grieve Ryerson employment actions.

First, in 1995, while Plaintiff was taking an extended sick leave, Ryerson posted a highly coveted "burner job"; under the terms of the collective bargaining agreement, Plaintiff should have had an opportunity to bid for the job when he returned. Plaintiff had more seniority than the person who had won the bid. However, Plaintiff made the request for the position approximately six months after it had been assigned to another employee.[2] USWA did file a grievance on behalf of the Plaintiff, but the grievance was rejected by Ryerson on the grounds that the job had been awarded six months before and a change would result in a massive disruption for multiple employees.

The other employment action which USWA allegedly failed to grieve adequately was the 1999 shift change that resulted in Plaintiff leaving Ryerson. It is undisputed that Plaintiff had moved to the day shift at Ryerson and wished to stay there. In May of 1999, Ryerson informed

[2] Plaintiff's sick leave was quite extensive. Still, it is unclear how long after Plaintiff's return the request for the job came.

Plaintiff and another employee, John Miller (who is white and had slightly more seniority than the Plaintiff), that the shift was being restructured and that Plaintiff and Miller could have their choice of second or third shift. Plaintiff chose to take a position[3] on the third shift (to accommodate his child care situation). Both Miller and Plaintiff asked USWA to grieve the shift transfer, but USWA determined that the transfer was legitimate.

Plaintiff's child care situation eventually resulted in his inability to come in to work on the third shift. After several days of absence, Ryerson informed Plaintiff that they would consider his failure to appear for work as a tender of resignation. Plaintiff did not work for Ryerson any further.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

---

[3] The position available involved less skill than did Plaintiff's day shift position. However, Ryerson continued to pay both Plaintiff and Miller the same wage they had received on day shift for the more skilled jobs. Plaintiff was moved from one job during third shift to another, but his rate of pay remained constant.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Age Discrimination Claims**

Defendant originally brought this action in Hennepin County District Court, so Minnesota state court rules regarding commencement of an action apply. *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989). In Minnesota, an action commences when it is served on the defendant. *See Ochs v. Streater, Inc.*, 568 N.W.2d 858 (Minn. Ct. App. 1997). In this action, Plaintiff served Defendant on June 27, 2000.

The statute of limitations for age discrimination claims is one year. *See* Minn. Stat. § 363.06, subd. 3. Plaintiff did not raise the issue of age discrimination in his E.E.O.C. charge, so he is limited to challenging actions which took place within one year of June 27, 2000. However, Plaintiff's employment with Joseph T. Ryerson & Son, Inc., ended June 13, 1999.[4] None of the allegedly discriminatory behavior took place after this date, a date which is outside

---

[4] Plaintiff suggests that his employment did not actually cease on June 13, 1999, even though that was the last day he worked. Plaintiff instead argues that he fully intended to return to work when his schedule permitted him to do so, but that he "was constructively discharged effective June 21, 1999 when he received a dismissal letter in the mail from Plant Manager Bennie Powell." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 27. Even if the Court considers June 21, 1999, to be Plaintiff's last date of employment, his claim for age discrimination, filed on June 27, 2000, falls outside of the one-year limitations period.

of the one-year limitations period. Accordingly, Plaintiff's age discrimination claim is time-barred.

Even if Plaintiff's age discrimination claim were not time-barred, however, the record contains absolutely no evidence from which a reasonable fact-finder could conclude that any of the allegedly discriminatory behavior of the Defendant was motivated by age discrimination. Plaintiff has wholly failed to present a *prima facie* claim of age discrimination, and, as such, the Defendant would be entitled to summary judgment on Plaintiff's age discrimination claims even if those claims were timely.

**3. Race Discrimination Claims**

This lawsuit is one of many brought by Ryerson employees against Ryerson and/or the Union. Plaintiff's counsel apparently represents most, if not all, of these Ryerson employees in their lawsuits. Accordingly, Plaintiff's counsel has tended to confound the claims of all of the employees, offering the entire litany of individual complaints as evidence of discrimination against each individual employee; moreover, Plaintiff's counsel has reasserted every alleged wrong perpetrated by Ryerson as part of his claim against the Union. As a result, it is difficult to parse out from the record the specific acts of discrimination allegedly committed by *this Defendant* against *this Plaintiff*. However, the Court has carefully reviewed the record and discerns four alleged acts (or groups of acts) which form the basis of these claims.

First, Plaintiff asserts that Ryerson delayed hiring Plaintiff; that delay affected Plaintiff's seniority; Ryerson's delay with respect to Plaintiff was part of a pattern or practice of delaying the hiring of minority job applicants; and the Union has thus used Ryerson's pattern of delay to impose a "glass ceiling" on minority employees at Ryerson. This contention cannot, however, for the basis for a viable claim against the Union. At a minimum, the allegedly discriminatory

behavior was Ryerson's delay in hiring Plaintiff–a behavior which took place in 1992, far outside any conceivable limitations period.[5] Moreover, the alleged wrongdoing was on the part of Ryerson, not the Union. No matter what the Union's own policies may be, the law does not impose an affirmative obligation on the Union to police the hiring practices of employers. Moreover, while Plaintiff contends that the Union failed to grieve claims of discrimination in hiring and probationary firing, Plaintiff did not, himself, ever request such a grievance, so he cannot bring a claim for the Union's failure to pursue such grievances.

Second, Plaintiff alleges that the USWA refused to grieve Plaintiff's complaints of discrimination and racial harassment. Plaintiff never specifies when and how often Plaintiff brought the issue of discrimination and racial harassment to USWA.[6] Still, assuming *arguendo* that Plaintiff brought every instance of discrimination and harassment described in the record to the attention of USWA, USWA's failure to grieve those instances does not amount to an adverse employment action. While the incidents Plaintiff describes cannot be excused, as a matter of law they do not amount to the type of severe and pervasive harassment necessary to maintain a civil

---

[5] Plaintiff suggests that the limitations period is tolled because the "hiring delays" constitute a continuing violation. This argument is in error. The Plaintiff may continue to experience effects of the alleged hiring delay because of the effect on Plaintiff's seniority, but such on-going effects of a discrete discriminatory act do not constitute a continuing violation. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977).

[6] In his brief and affidavit, Plaintiff asserts generally that he complained of discrimination "many times," but he does not indicate what specific complaints he made to USWA or when he made them. In support of the proposition that Plaintiff requested USWA intervention on discrimination complaints, Plaintiff's memorandum references a set of handwritten notes. The notes themselves are, for the most part, illegible. However, the record contains a typewritten document purporting to be a "summary" of those notes. Assuming that the typewritten document is an accurate reflection of the notes and that the notes themselves are admissible, the typewritten document describes many complaints Plaintiff had about his working conditions at Ryerson, some of them even related to alleged discrimination, but the notes do not appear to contain even a single mention of a formal complaint to USWA for intervention.

rights complaint, and, with the exception of the two incidents discussed below, they did not result in concrete changes to the terms and conditions of Plaintiff's employment. Accordingly, USWA's failure to grieve those incidents cannot support a civil rights complaint.

Finally, Plaintiff alleges that the USWA refused to grieve two specific employment actions: the 1995 incident in which Plaintiff was passed up for a "burner" job and the 1999 shift change that resulted in Plaintiff leaving Ryerson. With respect to the 1995 incident, there is nothing in the record to suggest that USWA's decision to accept Ryerson's rationale for refusing to reopen the bid was at all motivated by race. Similarly, with respect to the 1999 shift change situation, the record does not support Plaintiff's contention that USWA's failure to grieve was race-based; indeed, USWA refused to grieve the complaint of another white employee with more seniority who was subject to the same employment action.[7]

In sum, the Plaintiff has failed to allege any actionable conduct by USWA which could be construed as being motivated by unlawful racial animus. Defendant is entitled to summary judgment on all claims.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. No. 36) is **GRANTED**; and

2. The **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

---

[7] At the hearing on this matter, Plaintiff for the first time suggested that Miller, too, was the victim of racial animus because, although he was white, he was friends with minority employees and had championed their position at Ryerson. In other words, Plaintiff contends that Miller was the subject of unlawful retaliation. However, this bald assertion made during oral arguments is not supported by any evidence in the record. Plaintiff does not himself allege such a retaliatory motive against Miller, and Miller himself did not submit an affidavit. As a result, the argument must be rejected as going far outside the scope of the record before the Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 16, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*